# No. 23-7674

## United States Court of Appeals
## for the Second Circuit

---

IN RE DANIMER SCIENTIFIC, INC. SECURITIES LITIGATION

---

Appeal from the U.S. District Court for the Eastern District of New York
The Honorable Hector Gonzalez / No. 1:21-cv-2708

---

### APPELLEES' PRINCIPAL BRIEF

---

Brian M. Lutz
GIBSON DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8379
blutz@gibsondunn.com

Jonathan D. Fortney
GIBSON DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166
Telephone: (212) 351-4000
jfortney@gibsondunn.com

*Attorneys for Defendants-Appellees Danimer Scientific, Inc., Stephen E. Croskrey, John A. Dowdy, John P. Amboian, Richard J. Hendrix, Christy Basco, Philip Gregory Calhoun, Gregory Hunt, Isao Noda, Stuart W. Pratt, John W. Sweet, Harold Ford, Jr., Jonathan Furer, Tor R. Braham, and Andrea K. Tarbox*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Danimer Scientific, Inc. ("Danimer" or the "Company") hereby states that it has no corporate parent and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES ................................................................iv

I.     INTRODUCTION ................................................................. 1

II.    COUNTERSTATEMENT OF ISSUES PRESENTED ...........................3

III.   STATEMENT OF THE CASE ................................................4

     A.    Danimer Is Dedicated to Helping Solve the Plastic Crisis ...........4

     B.    Demand for Nodax Grows and Danimer Merges with Live Oak in De-SPAC Merger ...........................................5

     C.    Reporters and Short Sellers Raise Questions About How Long It Takes Nodax to Biodegrade ...........................6

     D.    Plaintiff's Complaint ......................................................7

     E.    Plaintiff's Appeal ..........................................................9

IV.   SUMMARY OF ARGUMENT ................................................ 12

V.    STANDARD OF REVIEW .................................................. 15

VI.   ARGUMENT ............................................................... 15

     A.    Dismissal Should Be Affirmed Based on Plaintiff's Failure to Satisfy the Falsity Element of His Section 10(b) Claim .......... 16

     1.    The Complaint Fails to Plead Particularized Facts Sufficient to Plead that Any of the Remaining Statements Were False or Misleading ................................................................ 16

     2.    Statements Are Legally Inactionable .......................................... 21

     3.    The Statements Are Not False or Misleading Whether They Are About Nodax or End Products ..................................24

B. Dismissal Should Be Affirmed Because Plaintiff Failed to Plead Scienter ................................................................25

1. The District Court Correctly Held That Plaintiff Failed to Plead Any Motive for Any Defendant .................................................27

2. The District Court Correctly Held That Plaintiff Failed to Plead Particularized Facts Supporting Conscious Misbehavior or Recklessness of Any Defendant.....................................................31

3. The District Court Properly Weighed Scienter Allegations Cumulatively and Did Not Need to List Non-Fraudulent Inferences ...................................................................................38

C. This Court Should Dismiss the Control Person Claim Because Plaintiff Failed to Plead a Primary Violation ................41

VII. CONCLUSION .......................................................................42

VIII. CERTIFICATE OF COMPLIANCE........................................44

IX. CERTIFICATE OF SERVICE ................................................45

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ........................................................................ 31

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ........................................................... 15, 17, 19

*Bonine v. Guccione*,
    2022 WL 102073 (2d Cir. Jan. 11, 2022) .................................................... 31

*Bruh v. Bessemer Venture Partners III L.P.*,
    464 F.3d 202 (2d Cir. 2006) ........................................................................ 16

*In re Citigroup Sec. Litig.*,
    2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ........................... 27, 32, 36, 40

*City of Birmingham Firemen's & Policemen's Supplemental
    Pension Sys. v. Ryanair Holdings PLC*,
    2020 WL 2834857 (S.D.N.Y. June 1, 2020) ............................................... 36

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
    Axonyx, Inc.*,
    374 F. App'x 83 (2d Cir. 2010) .................................................................... 25

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989) ........................................................................... 37

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan
    Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ........................................................................ 15

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ....................................................................... 19

*Francisco v. Abengoa, S.A.*,
    559 F. Supp. 3d 286 (S.D.N.Y. 2021) ......................................................... 37

*Frederick v. Mechel OAO*,
    475 F. App'x 353 (2d Cir. 2012) ................................................................. 37

iv

*Gissin v. Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010) ........................................ 22

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021) ......................................... 29

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v.
Royal Bank of Scot. Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) ...................................................... 15

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020) ..................................................37, 40

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ......................................................40

*Kashef v. BNP Paribas S.A.*,
925 F.3d 53 (2d Cir. 2019) ....................................................... 22

*Leacock v. IonQ, Inc.*,
2023 WL 6308045 (D. Md. Sept. 28, 2023) .............................30

*In re Lehman Bros. Sec. & ERISA Litig.*,
2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013).............................. 41

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ...................................................... 16

*In re Lottery.com, Inc. Sec. Litig.*,
2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) .......................... 28, 30

*Nandkumar v. AstraZeneca PLC*,
2023 WL 3477164 (2d Cir. May 16, 2023)...........................26, 30

*New England Carpenters Guaranteed & Annuity Pension Funds
v. DeCarlo*,
80 F.4th 158 (2d Cir. 2023) ..........................................26, 31, 41

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .................................... 27, 36, 37

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
2023 WL 5748359 (N.D. Ill. Sept. 6, 2023) .............................29

*Private Shreiber v. Synacor, Inc.*,
832 Fed. App'x. 54 (2d Cir. 2020) .............................................23

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
    573 F.3d 98 (2d Cir. 2009) ........................................................ 26

*Schwab v. E\*TRADE Fin. Corp.,*
    752 F. App'x 56 (2d Cir. 2018) ............................................... 41

*Set Capital LLC v. Credit Suisse Group AG,*
    996 F.3d 64 (2d Cir. 2021) ........................................................ 29

*Slayton v. Am. Express Co.,*
    604 F.3d 758 (2d Cir. 2010) ............................................... 22, 23

*Tabak v. Canadian Solar Inc.,*
    549 F. App'x 24 (2d Cir. 2013) ............................................... 28

*In re Vivendi Universal, S.A.,*
    2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) ......................... 29

*In re Weight Watchers Int'l Inc. Sec. Litig.,*
    504 F. Supp. 3d 224 (S.D.N.Y. 2020) ................................... 22

## Statutes

15 U.S.C. § 78u–5(c)(1)(A)(i) ........................................................ 22

15 U.S.C. § 78u–5(c)(1)(B)(i) ........................................................ 22

15 U.S.C. § 78u-4(b)(1)–(2) ........................................................ 15

15 U.S.C. § 78u-4(b)(1)(B) ........................................................ 17

15 U.S.C. § 78u-5(i)(1)(A)–(D) ................................................... 22

## Rules

Fed. R. Civ. P. 9(b) ................................................................. 15, 17

# I.   INTRODUCTION

Danimer is an innovative biotechnology company devoted to solving an environmental crisis decades in the making:  the harmful pollution of the world's land and water with petrochemical plastics.  Danimer manufactures a plant-based polymer called Nodax® used in many disposable products such as single-use bags, straws, and other packaging that, as Plaintiff acknowledges, will "break down thousands of years faster than traditional plastics."  JA48 ¶84.  Nodax has been certified by leading international testing organizations and academic researchers as a material that will reliably biodegrade in a wide variety of conditions, ranging from soil to marine environments.

In response to the prospect of increasing demand for biodegradable plastic products, Danimer in 2020 raised money to expand its production capacity and grow its partnerships with leading food and beverage and packaging companies.  As a newly public company with an innovative product in a nascent industry with significant growth potential, Danimer drew the attention of opportunistic investors and journalists who, while acknowledging that Nodax-based products would biodegrade in a variety of environments, questioned how long it would take for them to do so.

Plaintiff, a Danimer investor, filed the Complaint in this action following a downturn in Danimer's stock price.  Copying allegations contained in reports published by short sellers who sought to profit from the downturn in Danimer's stock price, Plaintiff alleged that Danimer, the Company's senior

officers, and many defendants who are no longer parties to this case violated the federal securities laws by making misstatements about the Company's business.  Plaintiff abandoned many of his claims against most of the originally named defendants during the motion to dismiss briefing before the District Court.  The District Court then dismissed what remained of Plaintiff's case with prejudice, finding that the Complaint lacked the necessary particularized facts showing that any defendant acted with fraudulent intent.

On appeal, Plaintiff has whittled his case down to just a handful of challenged statements that the District Court, applying plaintiff-friendly pleadings-phase inferences, found to be sufficiently pled.  But each of the remaining statements—about Nodax's ability to replace 80% of the world's plastics not incinerated or recycled, about the ability of Nodax-based products to decompose in places like oceans, and about Danimer's plans to partner with leading companies to develop biodegradable straws, bottles, and packaging— suffer from the same fatal deficiency: there are no facts pled demonstrating these statements were untrue or misleading.  Even the District Court's reasoning—that investors did not differentiate between the biodegradability of the raw material Nodax and the products manufactured using Nodax—said nothing about the truth or falsity of the handful of statements at issue on appeal.  The absence of any alleged facts, let alone well-pled facts as required, contradicting or rendering misleading any of these statements is a clear ground for affirming the dismissal of the Complaint.

Even if one or more of these challenged statements was sufficiently pled to be actionable, the Complaint still fails to state a securities fraud claim because, as the District Court correctly held, there are no specific facts alleged sufficient to satisfy the difficult scienter pleading requirement. Merely claiming that the Defendants must have acted with fraudulent intent because Nodax was important to Danimer's business, as Plaintiff asserts, is not enough to plead scienter. And pointing to a so-called "admission" by a Danimer employee that a statement not at issue on appeal was not entirely accurate is irrelevant to Defendants' scienter regarding the statements remaining in this case. Nor does it matter for scienter purposes that Danimer raised money through a de-SPAC transaction. Thus, as the District Court correctly concluded in a detailed analysis, none of Plaintiff's scienter allegations, considered holistically, raise a strong inference that any Defendant acted with fraudulent intent.

For these reasons, explained further below, the dismissal of Plaintiff's Complaint should be affirmed on the independent grounds that the Complaint fails to plead specific facts showing that any of the remaining statements are actionable or that any Defendant acted with scienter when making them.

## II. COUNTERSTATEMENT OF ISSUES PRESENTED

A. Plaintiff challenges only a handful of statements on appeal—that Nodax "can replace the 80% of plastics that are never recycled or incinerated," that Nodax and products made from it will "go away"

when they find themselves in "the wrong place" or "places that they don't belong like the ocean," and that Danimer was partnering with companies to develop in the future biodegradable straws, bottles, and packaging.  Should this Court affirm dismissal of the Complaint on the ground that Plaintiff failed to plead specific facts showing that any of these remaining statements were false or misleading when made?

B.  Should the Court affirm dismissal of the Complaint on the independent ground that, as the District Court concluded, Plaintiff failed to plead particularized facts raising a strong inference that any Defendant acted with fraudulent intent when making any of the eight statements remaining in this case?

### III.   STATEMENT OF THE CASE

### A.   Danimer Is Dedicated to Helping Solve the Plastic Crisis

Plaintiff asserts securities fraud claims against Danimer and three of the Company's senior officers, Messrs. Croskrey, Hendrix, and Dowdy (collectively, "Defendants"), for making alleged misstatements about Nodax, a biodegradable polymer sold by Danimer.  For over two decades, Danimer has focused on ending what Plaintiff calls the "global plague" of single-use non-biodegradable plastic in consumer goods packaging.  Appellant's Principal Brief, Dkt. 25.1 ("O.B.") at 14.   Danimer has developed a range of manufacturing processes and biopolymer formulations to create

4

biodegradable and compostable raw materials for use in a variety of consumer products. JA234. One of the Company's polymer products, Nodax, is used by Danimer's customers to manufacture biodegradable straws, single-use bags, and other products. JA234-36.

Nodax has been subjected to rigorous testing by independent researchers and international testing organizations to confirm the product's biodegradability under various conditions. TÜV Austria, an independent product testing and inspection organization, certified that Nodax biodegrades in 40 days, or 5.7 weeks, in fresh water, ocean water, soil, home composting, and industrial composting. JA382. Additional independent testing reached similar results for Nodax's aerobic (that is, when exposed to free oxygen) biodegradability. *See* JA399-411 (Merieux NutriSciences test of Nodax's aerobic biodegradability).

Researchers at the University of Georgia New Materials Institute published research in a peer-reviewed journal concluding that Nodax biodegrades in 85 days (12 weeks) in anaerobic conditions and six months (24 weeks) in aerobic conditions. JA413. All the testing and studies conclusively found that Nodax is biodegradable.

### B. Demand for Nodax Grows and Danimer Merges with Live Oak in De-SPAC Merger

As the world's attention focused on the environmental damage caused by the use of single-use products made from traditional plastic—which can take centuries to degrade while still leaving harmful chemicals in the

environment—interest in biodegradable plastic alternatives, like Nodax, surged. To ensure the Company could expand production to meet this clear market opportunity, in 2020 Danimer raised $385 million through a merger with a special purpose acquisition corporation ("SPAC") called Live Oak Acquisition Corp. *See* JA21-22, 451. Danimer became a publicly traded company following the merger. The deal provided Danimer with funds to manufacture Nodax at a scale necessary to meet the market opportunity for biodegradable products. *See* JA777.

### C. Reporters and Short Sellers Raise Questions About How Long It Takes Nodax to Biodegrade

A few months after Danimer became a public company (*see* JA167-68), *The Wall Street Journal* published an article raising questions about how long it takes products that incorporate Nodax to biodegrade under different conditions. O.B. at 10; JA455. The article referenced two scientists and a Danimer representative, all of whom confirmed that Nodax is biodegradable. JA457. The article also referenced Bacardi's chief sustainability officer who stated that a bottle under development with Nodax was expected to biodegrade in 18 months. *Id.* The article noted that "variations in temperature and microorganisms" can affect how long it takes a product manufactured using Nodax to biodegrade. JA457-58. And because exposure to bacteria is required to break down anything in the environment, the article noted that Nodax would not break down in "modern landfills," which are designed to prevent the release of methane gas by restricting access to bacteria and preventing

6

biodegradation. JA459.

Following the article, a short seller—meaning an investor who profits from the decline in Danimer's stock price—published reports containing similar allegations about the rate at which products incorporating Nodax would biodegrade under different conditions. O.B. at 11. Other short seller reports followed. SA3-4.

### D. Plaintiff's Complaint

In May 2021, Plaintiff filed his initial complaint. After being appointed Lead Plaintiff, Plaintiff filed the operative Complaint in January 2022. The Complaint asserted nine claims against fourteen defendants under six different sections of the Exchange Act and the Securities Act. *See* JA116-34. Plaintiff claimed that Defendants violated the federal securities laws by making false statements about Danimer's partnerships with food and beverage companies and about the Company's production capacity at its manufacturing facility in Kentucky, and by failing to disclose details about the Danimer CEO's prior employment at another company. JA66-67 ¶¶124-25. And Plaintiff, adopting the criticisms from the short seller reports and the *Wall Street Journal* article, also claimed that Defendants made misstatements about the biodegradability of Nodax. *See* JA49-50 ¶¶89-91; JA 29-31 ¶¶23-24.

Defendants moved to dismiss the Complaint in full. During the course of the motion to dismiss briefing, Plaintiff abandoned seven of nine claims asserted in his Complaint and dropped most of the named defendants, opting

to pursue only the Section 10(b) Exchange Act claim against Danimer and Messrs. Croskrey, Hendrix, and Dowdy (Count 1) and a tag-along control person claims (Count 2) against the same individuals. On September 30, 2023, the District Court issued a decision granting Defendants' motion to dismiss. The District Court concluded that Plaintiff failed to allege a misstatement based on Danimer's partnerships, production capacity, and the CEO's former employer, but concluded that—assuming all allegations to be true—a handful of the biodegradability statements were adequately alleged to be actionable at the pleadings stage because Danimer's statements "implicitly represented to a reasonable investor that products made using Nodax would biodegrade in a manner similar to raw Nodax." SA12.

Even as to these statements, the District Court concluded that Plaintiff failed to meet his burden of pleading particularized facts giving rise to a strong inference that the Defendants acted with scienter when making the challenged statements. The District Court rejected Plaintiff's theory that Defendants had a financial motive to commit fraud, SA23-24 ("a desire to raise capital . . . is insufficient to establish motive"), as well as Plaintiff's contention that scienter was adequately pled through the core operations theory, SA25 ("Danimer's core business is not sufficient by itself to allege that Defendants acted with scienter."). Without scienter adequately alleged for the only statements that the Court found to be actionable at the pleadings phase, the Court dismissed Plaintiff's securities fraud claim against all Defendants, as well as the control

8

person claim under Section 20(a), which requires a predicate primary violation of the Exchange Act. SA30.

### E. Plaintiff's Appeal

Plaintiff appealed the dismissal of his Sections 10(b) and 20(a) claims against Danimer and Messrs. Croskrey, Hendrix, and Dowdy. The only statements Plaintiff is challenging on appeal are the eight statements the District Court concluded were sufficiently pleaded. *See* O.B. at 2-3. Plaintiff therefore has abandoned his claims based on the dozens of other statements challenged in the Complaint, and those statements are not at issue in this appeal. Plaintiff also has abandoned all claims other than those brought pursuant to Sections 10(b) or 20(a) against the four defendants subject to this appeal. *See* O.B. at 2 (referring to Counts 3-9 of the Complaint as "abandoned"). The only statements at issue on appeal are as follows:

- o Statement 1: "Nodax™ . . . eliminates the need for recycling and can replace the 80% of plastics that are never recycled or incinerated." JA69-70 ¶132 (10/5/2020).

- o Statement 2: "[O]ur particular polymer is marine degradable, which means if it finds its way into the ocean, it will still go away." JA76-77 ¶141 (10/5/2020).

- o Statement 3: "When you make a fork or a straw or whatever you want to make out of it [i.e., Nodax], if it finds its way into the wrong place, bacteria will consume it." JA77 ¶143 (10/6/2020).

- o Statement 4: "[T]he new spirits bottle made from Nodax™ PHA will biodegrade in a wide range of environments, including compost, soil, freshwater and sea water, and after 18 months disappear without leaving behind harmful microplastics." JA80-81 ¶153 (10/21/2020).

9

o   Statement 5: "The straws will degrade in environments ranging from industrial composting facilities to home compost units and oceans without leaving behind microplastics." JA82 ¶156 (11/17/2020).

o   Statement 6: "Nodax . . . can replace the 80% of plastics that are never recycled or incinerated," and Nodax will "enable customers to incorporate environmentally responsible products into their supply chains." JA85-86 ¶167 (12/29/2020).

o   Statement 7: "[I]f these products get . . . into places that they don't belong like the ocean they will be consumed by bacteria and go away completely." JA86-89 ¶169 (12/30/2020).

o   Statement 8: "Danimer Scientific and Mars Wrigley plan to introduce Nodax® PHA into flexible and rigid packaging that reliably breaks down in both industrial composting facilities and backyard compost units." JA92 ¶177 (3/16/2021).[1]

Plaintiff contends in his appeal brief that these eight statements are "highly similar" if not "interchangeable." O.B. at 22. Even a cursory review of these statements shows that is not the case. These statements address the biodegradability of different products (bottles, forks, packaging) manufactured by different companies; the biodegradability of Nodax and products that use it in different environments (ocean, fresh water, industrial composting facilities, home composts); the amount of plastics that are never

---

[1] On appeal, Plaintiff purports to also challenge a different portion of this statement that refers to anticipated packaging for Skittles candy. That portion of the statement is not even mentioned in the Complaint, so is not alleged to have been false or misleading. *See* JA473-75 (3/16/2021); *see generally* JA92 ¶177 (quoting Mars Wrigley press release, but making no mention of Skittles packaging). In any event, as discussed below, this portion of the statement (like the portion challenged in the Complaint) is a protected forward-looking statement, and there are no facts alleged that Danimer and Mars Wrigley did not intend to develop packaging for Skittles candy.

recycled or incinerated that can be replaced by using Nodax (80%); and, in one statement, about how long it will take a bottle expected to be manufactured from Nodax to biodegrade (18 months).

Plaintiff makes little effort to demonstrate that the eight remaining statements are adequately alleged to have been false or misleading. He points to no facts alleged in the Complaint contradicting any of the statements. Instead, Plaintiff assumes the statements were misleading because that was what the District Court concluded at the pleadings stage. Adopting the District Court's framing, Plaintiff argues that a reasonable investor would have been focused of the biodegradability of end products made with Nodax and not raw Nodax. O.B. at 17. Plaintiff, however, makes no effort to explain how the Complaint pleads with particularity how an investor's focus on end products has anything to do with the eight challenged statements or shows that they were misleading. *See id.* at 16-19.

Plaintiff argues that the District Court's ruling dismissing the Complaint on scienter grounds should be reversed. Plaintiff contends that scienter has been adequately alleged (as to which statements and which Defendants, Plaintiff does not say) because a Danimer employee allegedly "admitted" that Nodax will not biodegrade in landfills designed to prevent biodegradation—a statement that is not challenged on appeal. O.B. at 20-23. According to Plaintiff, the Court should infer that every Defendant acted with fraudulent intent under the "core operations doctrine" because Nodax was important to

Danimer. *Id.* at 23-27. Plaintiff argues that Danimer raising money and going public through a de-SPAC merger necessarily means that Defendants had motive and opportunity to commit fraud. *Id.* at 27-30. And despite the District Court's ruling that all of Plaintiff's allegations, when considered holistically, did not give rise to a strong inference of scienter, Plaintiff claims the District Court erred by not identifying in its opinion the competing, non-fraudulent inferences. *Id.* at 30-32.

## IV.   SUMMARY OF ARGUMENT

This Court should affirm the District Court's decision for two, independent reasons: (1) Plaintiff failed to plead particularized facts showing that any of the eight statements Plaintiff challenges on appeal were false or misleading, and (2) as the District Court held, Plaintiff failed to plead particularized facts supporting a strong inference that any Defendant acted with scienter when making any of these statements.

Failure to Allege Falsity:  The Complaint pleads no particularized facts demonstrating that any of the statements remaining at issue in this case were false or misleading.  The District Court's narrow focus, when addressing the falsity element, on the conflation of Nodax and the end products manufactured from Nodax did not address the relevant question:  whether the Complaint contained particularized facts demonstrating that each of the statements remaining in the case were false or misleading when made.  The Complaint contains no such facts that—even if assumed to be true—render any of the

remaining statements false or misleading.

There are no facts pled undercutting Danimer's assertion that Nodax can replace 80% of plastics that are never recycled or incinerated.  Plaintiff challenges statements that Nodax and products that use it will "marine degrad[e]" or "go away" if they end up in "places that they don't belong like the ocean," but the Complaint contains no facts showing that Nodax or products made from it do *not* biodegrade.  The extensive independent testing, incorporated by reference in the Complaint, verifies the biodegradability of Nodax and shows this theory of fraud fails.  Plaintiff challenges statements about Danimer's plans to develop biodegradable packaging, straws, and bottles with food and beverage partners, but these are protected forward-looking statements and there is nothing alleged in the Complaint showing that these product development plans did not exist.  Thus, the Complaint contains no facts demonstrating that any of the statements at issue on appeal were false or misleading at the time they were made, so the dismissal of Plaintiff's Complaint should be affirmed on this basis.

Failure to Allege Scienter:  This Court also should affirm the District Court's holding that the Complaint failed to plead particularized facts sufficient to plead that any Defendant acted with fraudulent intent when making any of the statements at issue on appeal.  There are no facts suggesting that any Defendant had a personal motive to commit fraud.  Simply because Danimer became a public company through a de-SPAC transaction does not

create a motive to commit fraud.

In addition, the Complaint fails to plead particularized facts supporting an inference that any Defendant acted with conscious misbehavior or recklessness. The Complaint contains no facts demonstrating that any Defendant knew or was reckless in not knowing that any of the remaining challenged statements were false or misleading when made. In fact, Plaintiff does not even try in his appeal brief to argue otherwise. Rather than pointing to specific facts showing that Defendants knew or should have known the challenged statements were not true, Plaintiff argues that the District Court erred in not considering an alleged "admission" by a Danimer employee about a statement not at issue in this appeal concerning the biodegradability of Nodax in modern landfills. Contrary to Plaintiff's contention, the District Court expressly considered this and appropriately rejected it as a basis for pleading scienter. Plaintiff's reliance on the core operations doctrine also is misplaced. The District Court correctly concluded that simply because Nodax is alleged to have been important to Danimer does not mean Plaintiff can infer that Defendants knew the remaining statements were misleading or untrue. And finally, Plaintiff is simply wrong that the District Court was required to list every fraudulent and non-fraudulent inference it considered. There is no such mechanical requirement, particularly where the District Court carefully evaluated and considered holistically all of Plaintiff's scienter arguments and concluded they did not give rise to a strong inference of scienter.

14

## V.   STANDARD OF REVIEW

This Court reviews the "district court's grant of a motion to dismiss *de novo*." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  In addition, "[a] complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and [Federal Rule of Civil Procedure] 9(b) by stating with particularity the circumstances constituting fraud." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  The PSLRA requires that a complaint "specify each statement alleged to have been misleading" and the "reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)–(2); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99-100 (2d Cir. 2007).

## VI.   ARGUMENT

The District Court properly dismissed the Complaint in its entirety for Plaintiff's failure to adequately allege that any Defendant deliberately misled investors.  Plaintiff seeks reversal of the District Court's dismissal as to only eight of the 62 statements challenged in the Complaint, claiming these challenged statements give rise to a claim under Sections 10(b) and 20(a) of the Exchange Act.  O.B. at 2.  Plaintiff has abandoned any other claims relating to the other statements not on appeal, and they need not be considered by this

Court. *Id.* at 2-3.

Plaintiff's narrowing of his claims does not solve Plaintiff's fundamental pleading problem. The District Court's order of dismissal should be affirmed for two independent reasons: (1) Plaintiff did not adequately allege that any statement challenged on appeal was false or misleading; and (2) Plaintiff failed to adequately allege scienter. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

## A. Dismissal Should Be Affirmed Based on Plaintiff's Failure to Satisfy the Falsity Element of His Section 10(b) Claim

This Court "may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 205 (2d Cir. 2006). While the District Court correctly dismissed the entire Complaint on scienter grounds, its ruling that a handful of alleged misstatements were adequately alleged to have been misleading ignored the requirement that Plaintiff plead particularized facts demonstrating how each specific statement was false or misleading. The Complaint does not satisfy this requirement, and thus, the dismissal should be affirmed on this independent basis.

### 1. The Complaint Fails to Plead Particularized Facts Sufficient to Plead that Any of the Remaining Statements Were False or Misleading

To adequately plead securities fraud, plaintiffs must "specify *each statement* alleged to have been misleading" and "the reason or reasons why

the statement is misleading." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99-100 (2d Cir. 2007) (emphasis added). Rather than confronting the requirement of pleading particularized facts demonstrating that *each* statement was false or misleading, *see* 15 U.S.C. § 78u-4(b)(1)(B); Fed. R. Civ. P. 9(b), Plaintiff simply *assumes* the eight remaining statements are actionable, *see* O.B. at 2 ("Given that the Greenwashing Statements were misleading …"). Plaintiff also seeks to subvert the particularized pleading standard by claiming—falsely—that each of the remaining challenged statements are "highly similar, if not substantively interchangeable." *Id.* at 22. Plaintiff attempts to conflate the statements in order to mask Plaintiff's fundamental problem in pleading falsity: the Complaint contains no specific facts, as required, contradicting any of the specific statements challenged in this appeal or even remotely suggesting that any of them was false or misleading when made.

Take statements 1 and 6, in which Danimer stated that Nodax "can replace the 80% of plastics that are never recycled or incinerated." Plaintiff makes no effort to point to facts alleged in the Complaint demonstrating that these statements were untrue or misleading, because no such facts are pled.

The same is true of statements 2, 3, and 7. In those challenged statements, Defendant Croskrey stated that Nodax or the products that contain it are "marine degradable," meaning they will biodegrade in the ocean; that if

forks or straws "find [their] way into the wrong place"[2] or "places that they don't belong like the ocean," they will be "consumed by bacteria." O.B. at 6-8. Again, Plaintiff does not try to identify allegations in the Complaint demonstrating that these statements were false or misleading. That is because there are no facts alleged in the Complaint that Nodax or products that incorporate that polymer are *not* marine degradable or *will not* be consumed by bacteria if they are disposed in the ocean.

In the three remaining challenged statements—statements 4, 5, and 8—Danimer announced partnerships to develop biodegradable products with Eagle Beverage (straws), Bacardi (bottles), and Mars Wrigley (food packaging). O.B. at 6-8. What facts alleged in the Complaint does Plaintiff point to demonstrating that these partnerships or the product development plans did not exist? None. Why? Because no such facts are alleged in the Complaint. Plaintiff says nothing specific in his appeal brief about the Eagle Beverage and Mars Wrigley statements, other than to repeat the statements themselves. As to the Bacardi product statement, Plaintiff characterizes the alleged misstatement as follows, *id.* at 7:

---

[2] Plaintiff tries to manipulate Statement 3 to suggest that Mr. Croskrey was referring to landfills when he referred to "the wrong place" for forks or straws to end up, *see* SA9; O.B. at 6-7, but that is not what Mr. Croskrey said, *see* JA77 ¶143. From the plain language of statement 3, and from the similar statement 7, it is clear that Mr. Croskrey was referring to places "like the ocean" as the "wrong place" for straws or forks to end up.

> - In a joint press release that Danimer issued with Bacardi in October 2020, the companies said that they intended to collaborate to create by 2023 a "new spirits bottle made from Nodax™ PHA [that] will *biodegrade in a wide range of environments, including compost, soil, freshwater and sea water, and after 18 months disappear without leaving behind harmful microplastics.*" JA80-81¶153 (10/21/2020).

At most, Plaintiff makes passing reference in his appeal brief to the *Wall Street Journal* article citation to Michigan State professor Dr. Narayan who, according to the article, believes that "variations in temperature and microorganisms in the ocean make it very difficult to promise a bottle made from Nodax will biodegrade in 18 months." O.B. at 10. Because ocean temperatures vary and can be different than the conditions in which Nodax was tested and certified as biodegradable, products using Nodax, according to the article, "could degrade more slowly in real life." JA458. The article also referenced Bacardi's sustainability head, who "said he is confident the upcoming bottle will be 100% biodegradable in 18 months." *Id.* This debate about how long it would take a product still under development to degrade under different conditions is a far cry from particularized facts demonstrating that anything in the Danimer/Bacardi press release about their plans to develop a product for release three years later was false or misleading. *See ATSI* 493 F.3d at 102-03 ("speculative inferences" are insufficient under Fed. R. Civ. P. 9(b)); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d

278, 286 (5th Cir. 2006) (expert's "opinions cannot substitute for facts under the PSLRA").[3]

Plaintiff makes two other one-sentence arguments, neither of which suggest that any of the remaining challenged statements are actionable. First, Plaintiff claims that Danimer's Chief Technology Officer, Mr. Van Trump, "admitted to the press that CEO Croskrey's representations were not 'wholly accurate.'" O.B. at 17 (quoting JA29 ¶20, which in turn quotes the *Wall Street Journal* article Plaintiff relies on at JA459). That is both misleading and beside the point. Plaintiff ignores the full context of Mr. Van Trump's statements in the article: that Nodax "truly is biodegradable," and that "[t]he only thing that will potentially change is how long it takes to biodegrade" depending on the conditions in which the product is disposed. JA457. The point Mr. Van Trump clarified, according to the article, is that while Nodax products are biodegradable, "modern landfills are designed to prevent biodegradation" (*i.e.*, to prevent the escape of methane). JA459. But none of the challenged statements have anything to do with whether Nodax will biodegrade in landfills designed to prevent biodegradation. The statement Mr. Van Trump clarified, according to the article, was that Nodax would be consumed by bacteria if it ended up in a landfill—a statement that is not among the eight challenged on appeal. *Id.*

---

[3] Regardless, Danimer's statement about how long it would take a bottle that had not yet been manufactured to biodegrade is a protected forward-looking statement that is inactionable as a matter of law. *See infra*, at Section VI(A)(2).

Second, Plaintiff argues that Defendants somehow admitted that the remaining statements were misleading by revising investor presentations over time to removing certain language. O.B. at 18 (citing JA31 ¶26; JA51-52 ¶93; JA101 ¶196). But the language Plaintiff claims was modified had nothing to do with any of the remaining challenged statements. *See* JA31 ¶26 (Danimer removed "derived from 100% Renewable Source" from presentation); JA51-52 ¶93 (same for "fully degradable in 12-18 weeks after the product is discarded").[4] Again, none of the statements Plaintiff challenges on appeal were made in the investor presentations Plaintiff claims were modified. Changes to irrelevant language not challenged in this appeal does not help Plaintiff plead falsity of the statements that remain in this case.

The bottom line is that Plaintiff cannot simply assume falsity. He must point to particularized facts establishing that each of the eight remaining misstatements is false or misleading. Plaintiff has not, and cannot, do that.

### 2. Statements Are Legally Inactionable

Three of the statements challenged on appeal—statements 4, 5, 8—are statements in press releases about products Danimer and its partners "intend" to develop, "plan to introduce," or "will" manufacture in the future.[5] These

---

[4] Danimer stands behind the truthfulness of these statements but does not present argument as to their accuracy because they are not at issue on appeal.

[5] These statements were identified as forward-looking before the District Court, JA201, JA208-11, are facially forward-looking, and should be found to be inactionable even though they were not the focus of Defendants' forward-

statements are not actionable for the independent reason that they are protected forward-looking statements. *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 254 (S.D.N.Y. 2020) (outlining "future plans" is "necessarily . . . forward-looking"); *see also Gissin v. Endres*, 739 F. Supp. 2d 488, 507 n.108 (S.D.N.Y. 2010) (statements of confidence in future performance based on "current expectation" were forward-looking).

The PSLRA provides a safe harbor for forward-looking statements, defined to include "statement[s] of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 78u-5(i)(1)(A)–(D). Forward-looking statements are protected if "the allegedly false or misleading statement is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *Slayton v. Am. Express Co.*, 604 F.3d 758, 768 (2d Cir. 2010) (quoting 15 U.S.C. § 78u–5(c)(1)(A)(i).

Even if the forward-looking statement is not accompanied by cautionary language, a forward-looking statement is protected unless a plaintiff "prove[s]" the statement "was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u–5(c)(1)(B)(i). Because

---

looking statement arguments below. *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 62 (2d Cir. 2019).

"[t]he safe harbor is written in the disjunctive," a forward-looking statement is not actionable if *either* safe harbor provision applies—*i.e.*, cautionary language *or* no actual knowledge of falsity. *Slayton*, 604 F.3d at 766; *see* SA12.

Statements 4, 5, and 8 fall within the safe harbor. The Complaint contains *no* allegations demonstrating that any Defendant had actual knowledge that the products and partnerships announced in the press releases—with Eagle Beverage Products (straws), Bacardi (bottles), and Mars Wrigley (packaging)—would not occur or that the products, when developed, would not perform as anticipated. And statements 5 and 8 were made in press releases containing Risk Factors alerting investors that the biopolymer products may not achieve market success for many reasons, including "[Danimer's] ability to produce products fit for their intended purpose," and "Danimer may be unable to obtain [biodegradability] certifications required by certain customers." JA470 (incorporating Risk Factors in Registration Statement (Dist. Ct. ECF No. 61-15)); JA476-77 (incorporating same Risk Factors in annual Report on Form 10-K (JA226-318)). These statements therefore are protected under the PSLRA safe harbor. *Private Shreiber v. Synacor, Inc, 8*32 Fed. App'x. 54, 57 n.1 (2d Cir. 2020) (summary order) (finding risk factors that warned of revenue risks tied to changes in customer behavior and the company's ability to execute on "plans and strategy" sufficient for application of PSLRA safe harbor) (incorporating by citation

*Private Shreiber v. Synacor, Inc,* 19-4232, Dkt. No 59 at 42-45 (2d Cir.) (appellees' brief).

### 3. The Statements Are Not False or Misleading Whether They Are About Nodax or End Products

Like Plaintiff, the District Court also offered no explanation as to what particularized allegations rendered the eight statements at issue on appeal false or misleading at the time they were made. Instead, the District Court grounded its falsity ruling on its view that the statements "would lead a reasonable person to believe" that they were about the "the biodegradability of end products," and would "convey to a reasonable investor that the products into which Nodax would be incorporated would biodegrade in a manner similar to Nodax." SA8-12.

These observations, whether accurate or not, say nothing about the truth or falsity of the eight statements at issue in this appeal, because the truth or falsity of these statements does not depend on whether the statement is about Nodax or an end product that incorporates Nodax. Neither the Complaint nor the District Court's opinion points to any particularized allegation undermining Defendants' statement that Nodax (or products made with it) "can replace the 80% of plastics that are never recycled or incinerated" and can "enable customers to incorporate environmentally responsible products into their supply chains." (Statements 1, 6.) Nor does the conflation of Nodax and end products made from it contradict the assertion, based on extensive independent testing, that Nodax and products Danimer's partners plan to

24

make with Nodax degrade in a number of different environments. (Statements 2, 3, 4, 5, 7, 8.)[6]  In other words, whether the challenged statements were false or misleading *does not* turn on whether the statements were about Nodax or products made from Nodax.  There are simply no facts alleged in the Complaint or identified in Plaintiff's appeal brief that contradict any of the statements that remain in this case or render them misleading.

For all these reasons, dismissal of the Complaint should be affirmed because Plaintiff failed to satisfy the falsity element of his securities fraud claim.

## B.  Dismissal Should Be Affirmed Because Plaintiff Failed to Plead Scienter

The District Court correctly held that "Plaintiffs have failed adequately to allege that Defendants made [the] statements with scienter."  SA21.  To

---

[6]  The District Court also noted in *dicta* that certain statements from confidential witnesses cited in the Complaint "support Plaintiffs' arguments that Defendants' statements were false."  SA25-26.  But only two confidential witnesses provided any statement related to biodegradability.  CW1 "expressed skepticism concerning Danimer's representations that Nodax® was 100% biodegradable."  SA26.  And the Complaint claims CW2 said that "other chemicals are added" to Nodax.  *Id.*  The statements from unidentified, low-level employees who are not alleged to have had any involvement in scientific testing or measuring biodegradability of Nodax, and whose alleged opinions are contradicted by independent scientific testing incorporated in the Complaint, *see* JA319-31; JA413, are not credible.  The allegations attributed to these unnamed witnesses do not establish that any of the challenged statements were false or misleading.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Axonyx, Inc.*, 374 F. App'x 83, 85 (2d Cir. 2010) (affirming dismissal of complaint where "appellants rely on opinions of confidential witnesses to support their allegations, but they fail to offer any factual underpinnings for those opinions"); *see also* JA319-31 (TUV Certifications); JA166.

plead scienter, a Plaintiff must plead particularized "facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *2 (2d Cir. May 16, 2023). In order to adequately plead this element, a plaintiff must "state with particularity facts giving rise to a strong inference" that each defendant acted with the requisite state of mind. *New England Carpenters Guaranteed & Annuity Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023). "To allege a strong inference of scienter, as required by the PSLRA, 'it is not sufficient to set out facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent, for that gauge does not capture the stricter demand Congress sought to convey in [the PSLRA].'" *Nandkumar*, 2023 WL 3477164, at *2 (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009)).

On appeal, Plaintiff recycles the same deficient scienter arguments the District Court properly rejected. Plaintiff claims that the Defendants had an illicit motive to defraud because Danimer became a public company as a result of a de-SPAC transaction—a contention for which Plaintiff cites no supporting case law, and which the District Court properly rejected. And Plaintiff makes the vague contention that the Defendants must have acted with conscious misbehavior or deliberate recklessness when making the remaining challenged statements without specifying what facts Defendants supposedly knew that

26

made any of these statements untrue or misleading. The District Court "weighed Plaintiffs' scienter allegations cumulatively" and found that "since none of the theories of scienter . . . is particularly strong, . . . the allegations d[id] not cumulatively raise a compelling inference of scienter." SA29-30; *see also* SA29 (citing *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *22 (S.D.N.Y. Mar. 24, 2023)). Now that Plaintiff has narrowed his case to the eight remaining statements, Plaintiff's failure to plead particularized facts raising a strong inference that any Defendant acted with scienter is even more apparent.

### 1.  The District Court Correctly Held That Plaintiff Failed to Plead Any Motive for Any Defendant

The District Court properly rejected as insufficient the baseless illicit motive theory Plaintiff recycles on appeal. To sufficiently allege that a defendant had a motive to commit fraud, a Plaintiff must show that the defendant personally "benefitted in some concrete and personal way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000). Plaintiff claims that Danimer, Croskrey, and Dowdy had motive to commit fraud because they wanted to close the de-SPAC merger to provide funding for Danimer to increase its production capacity, and that Hendrix was motivated to complete the merger because without a deal, the SPAC would have to return investor money. O.B. at 29. Plaintiff, at bottom, asks this Court to create a unique scienter rule for litigation involving SPACs, which, according to Plaintiff, involve "special circumstances that go beyond Defendants' generic

27

desire to maintain a profitable company." SA22.

The District Court correctly rejected this argument. There is nothing unique or improper about a desire by a company or its senior officers to raise money—from a de-SPAC transaction or otherwise—to fund operations. As the District Court concluded, the "argument that Danimer, Croskrey, and Dowdy had a motive to mislead investors in order to use the de-SPAC merger to raise the money necessary to fund Danimer's expansion plans fails because 'a desire to raise capital . . . is insufficient to establish motive because it is a goal possessed by virtually all corporate insiders.'" SA23 (quoting *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28 (2d Cir. 2013)). And as to Plaintiff's argument that Hendrix was incentivized to complete the merger to avoid having to pay back SPAC investors, the Complaint contained no specific allegations that Hendrix risked losing a concrete and personal benefit if the SPAC passed up the Danimer merger and pursued a different transaction.[7] *See* SA24 ("Although Plaintiffs insist that the SPAC model of taking a company

---

[7] Hendrix is the only remaining Defendant who also served as a member of the SPAC's management. So even crediting Plaintiff's baseless theory, Hendrix is the only Defendant who could even theoretically have a motive to complete the de-SPAC transaction in order to not have to return money to the SPAC's investors. But the only statement alleged to have been made by Hendrix happened *after* the de-SPAC transaction. *See* JA85-86 ¶167. Plaintiff's motive theory for Hendrix therefore makes no sense: he could not have had an illicit motive to lie in order to complete the de-SPAC merger when the de-SPAC merger already was completed at the time of his alleged misstatement. *In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *32 (S.D.N.Y. Feb. 6, 2024) ("If the alleged motive to commit fraud arose out of Defendants' desire to ensure that the de-SPAC transaction happened, that motive dissipated once the de-SPAC transaction was complete.").

public puts unique pressures on the shell company's management to complete a bad deal, . . . they cannot allege that Defendant Hendrix personally had a motive to defraud based on incentives supposedly faced by SPACs generally." SA24; *see Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 2023 WL 5748359, at *15 (N.D. Ill. Sept. 6, 2023) ("To allege that employees of SPACs generally will have the motivation to defraud in order to ensure the successful acquisition of a target says nothing about the motivations, circumstances, and factors *particular* to [each defendant].").[8]

Despite criticizing the District Court for citing cases "mostly not involving SPACs," O.B. at 28, Plaintiff on appeal relies on the same inapposite cases it cited before the District Court—*Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64 (2d Cir. 2021), and *In re Vivendi Universal, S.A.*, 2004 WL 876050 (S.D.N.Y. Apr. 22, 2004)—neither of which involved SPACs or limited-time horizon investment vehicles. *Vivendi* also expressly distinguishes between specific, detailed allegations against a defendant and the generic allegations at issue here. *See* 2004 WL 876050, at *8 (specific facts pled

---

[8] Plaintiff argued below that Danimer was motivated to inflate its stock price so that Danimer could redeem warrants at a lower price. Plaintiff abandoned this argument on appeal, and for good reason. As the District Court concluded, this alleged motive to increase Danimer's stock price was "insufficient to establish a motive to defraud" because it was "not meaningfully different from arguing that a company executive has a motive to increase the company's share price beyond the exercise price of his or her stock options." SA24; *see, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 313 (S.D.N.Y. 2021) (that "some of the individual defendants held options with high strike prices [was] not enough to support a strong inference of scienter").

regarding defendant defrauding plaintiff to enter into agreement distinguishable from "more general motives that have been held insufficient to support scienter").

Defendants have identified no cases endorsing the "SPAC" motive to defraud that Plaintiff asks this Court to adopt. And for good reason. Plaintiff's position is no different than the repeatedly rejected theory that a general motive to complete a transaction, raise money, or increase a company's stock price is sufficient to plead a motive to defraud. *See Lottery.com*, 2024 WL 454298, at *32 (court unwilling to create exception to general principal that desire to complete public offering insufficient to plead motive); *Leacock v. IonQ, Inc.*, 2023 WL 6308045, at *28 (D. Md. Sept. 28, 2023) (rejecting motive allegations related to SPAC merger because "a strong inference of fraud does not arise merely from seeking capital to support a risky venture" and "motivations to raise capital or increase one's own compensation are common to every company and thus add little to an inference of fraud" (citation omitted)); *Nandkumar*, 2023 WL 3477164, at *3 (rejecting as insufficient to plead scienter a "generalized desire to achieve a lucrative acquisition proposal" that "could be attributed to the directors and officers of any corporation" (citation omitted)).

Thus, Plaintiff's attempt to presume scienter simply because Danimer became a public company through a de-SPAC transaction is baseless, unsupported by particularized facts or case law, and should be rejected.

2. **The District Court Correctly Held That Plaintiff Failed to Plead Particularized Facts Supporting Conscious Misbehavior or Recklessness of Any Defendant**

The District Court correctly held that "Plaintiffs have also failed adequately to allege circumstantial evidence that Defendants engaged in conscious misbehavior or recklessness." SA25. Because Plaintiff failed to plead an illicit motive to defraud, "the circumstantial evidence of conscious misbehavior must be correspondingly greater and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (quotation marks omitted). Plaintiff must plead particularized facts showing "deliberate illegal behavior" or recklessness that amounts to an "extreme departure from the standards of ordinary care," making the danger of misleading "known to the defendant or so obvious that the defendant must have been aware of it." *New England Carpenters*, 80 F.4th at 178.

Where, as here, a defendant's scienter is based on supposed knowledge that a challenged statement was untrue or misleading, a plaintiff must plead particularized facts showing that the defendant had access to information showing that the statement was untrue or misleading at the time it was made. *See Bonine v. Guccione*, 2022 WL 102073, at *1-2 (2d Cir. Jan. 11, 2022) (finding scienter not alleged where "complaint does not allege facts that if proven would demonstrate that Defendants were aware of . . . alleged

31

misconduct *at the time* they disclosed . . . supply chain problems to investors"); *Citigroup*, 2023 WL 2632258, at \*22 ("Thus, '[w]here scienter is based on a defendant's knowledge of and/or access to certain facts, Plaintiffs must allege facts showing that (i) '*specific* contradictory information was available to the defendants' (ii) '*at the same time* they made their misleading statements.'" (citation omitted)). Here, Plaintiff points to no such facts in his appeal brief, because none are pleaded in the Complaint.

### a. The Complaint Contains No Facts Showing that Any Defendant Knew or Was Reckless in Not Knowing That Any of the Remaining Challenged Statements Were False or Misleading.

Plaintiff's appeal brief is striking in its refusal to confront the requirement for pleading conscious misbehavior or recklessness. Plaintiff does not even mention the substance of the eight remaining statements in Plaintiff's scienter argument in his appeal brief, let alone point to facts showing that any Defendant knew—or was reckless in not knowing—that any of these statements was false or misleading when made.

Plaintiff identifies no facts, for example, that Defendants knew or were reckless in not knowing that Nodax *cannot* "replace the 80% of plastics that are never recycled or incinerated." (Statements 1, 6.) Plaintiff points to no facts showing that Croskrey had access to information showing he knew or was reckless in not knowing that Nodax was *not* "marine degradable," or that forks or straws manufactured with Nodax that "find [their] way into the wrong

32

place" or "places that they don't belong like the ocean" *will not* be "consumed by bacteria." (Statements 2, 3, 7.) And Plaintiff does not argue that that any Defendant knew or was reckless in not knowing that Danimer was *not* partnering with Eagle Beverage, Bacardi, or Mars Wrigley, or that Danimer and these partners *would not* develop the straws, bottles, and packaging products mentioned in the press releases. (Statements 4, 5, 8.) As to the Bacardi bottle mentioned in Statement 4, Plaintiff points to no facts (because none are alleged in the Complaint) demonstrating that any Defendant had access to information showing that the bottle that Danimer and Bacardi hoped to develop three years later *would not* biodegrade in 18 months. Plaintiff's failure (and inability) to plead these essential facts is fatal to pleading scienter under a conscious misbehavior or recklessness theory.

Plaintiff, instead, contends that the so-called "admission" by Mr. Van Trump in the *Wall Street Journal* article is somehow sufficient to plead that every Defendant acted with fraudulent intent when making each of the remaining statements. This argument is nonsensical. According to the article, Mr. Van Trump responded to the debate about the rate at which products using Nodax would biodegrade by saying that Nodax "truly is biodegradable so we're not greenwashing . . . . The only thing that will potentially change is how long it takes to biodegrade." JA457. The article claimed that "[a]t some ocean temperatures, Nodax straws could take between five and 10 years to biodegrade," and "[b]ags and bottles could take even longer." JA458. The

33

article again quoted Mr. Van Trump, who said that these were a "worst-case scenario" and that, "even Danimer's most conservative testing shows far quicker biodegradation." *Id.* The article noted several companies that were manufacturing products made from Nodax—Bacardi, Nestle, Columbia Packaging Group, and Urthpact LLC—each of which said their products (straws, bottles, packing) would biodegrade. According to the article, Mr. Croskrey said on an unidentified earnings call that products manufactured from Nodax would biodegrade in landfills.[9] The article said (without a quotation) that Mr. Van Trump clarified that this would not apply to modern landfills that are designed to prevent exposure to bacteria and the release of methane, a greenhouse gas.

Nowhere does Plaintiff explain why anything in this article—including any supposed "admission"—demonstrates that any Defendant knew or was reckless in not knowing that any of the statements remaining in this case were false or misleading. As the District Court correctly concluded, "the supposed admission by Danimer's Chief Technology Officer, who has not been named as

---

[9] The article may have been referring to an October 6, 2020 discussion between Mr. Croskrey and a TD Ameritrade analyst in which Mr. Croskrey said: "When you make a fork or a straw or whatever you want to make out of it [i.e., Nodax], if it finds its way into the wrong place, bacteria will consume it. It's awesome." SA9; JA77 ¶143. This statement obviously makes no reference to a "modern landfill," nor would a reasonable investor believe that Mr. Croskrey was referring to a landfill (modern or otherwise); a landfill is not "the wrong place" for waste items. The ocean is. *See, e.g.*, Statement 7 ("[I]f these products get . . . into places that they don't belong *like the ocean* they will be consumed by bacteria and go away completely.") (emphasis added).

a Defendant, to the *Wall Street Journal* that Nodax would not biodegrade in landfills does not suggest that Defendant Croskrey acted with scienter." SA27. And the statement that Mr. Van Trump supposedly clarified is not even challenged as false or misleading in this appeal. The same is true of the other Defendants in the case, whose scienter cannot be imputed by a so-called "admission" about an issue that has nothing to do with the statements remaining in the case.

Finally, as the District Court correctly observed, even assuming Mr. Van Trump had information that led him to believe any of the remaining statements were misleading (and no such facts are alleged), Plaintiff alleges no facts showing that Mr. Van Trump shared any such information with any Defendant. *See* SA27 ("Plaintiffs have not alleged that Danimer's Chief Technology Officer conveyed this information to Defendant Croskrey before Croskrey gave the interview, or at any other time, thereby eliminating any inference that Croskrey knowingly or recklessly spoke falsely during the interview.").

Thus, Plaintiff has failed to plead facts supporting a strong inference that any Defendant acted with conscious misbehavior or recklessly when making any of the challenged statements at issue on appeal.

### b. The District Court Properly Rejected Plaintiff's Core Operations Argument

As the District Court correctly concluded, "Plaintiffs' assertion that selling Nodax was Danimer's core business is not sufficient by itself to allege

that Defendants acted with scienter." SA25. On appeal, Plaintiff argues that the District Court was wrong, that Plaintiff should be permitted to rely on the core operations doctrine to plead scienter, and that Plaintiff has done so by pleading that because the Nodax was important to Danimer's business, "Defendants' 'knowledge of facts or access to information contradicting their public statements'" should be inferred. O.B. at 24 (quoting *Novak*, 216 F.3d at 308).

Plaintiff's core operations argument falters on numerous grounds. First, Plaintiff misstates Second Circuit case law, claiming that "in *some* cases, [the core operations doctrine] alone *may* suffice" to plead scienter. O.B. at 26 (emphases added). Not so. As Plaintiff's own cited authority makes clear, "it is 'questionable' whether the core operations doctrine is good law after the enactment of the PSLRA. But in any event, *the doctrine, standing alone, cannot support an inference of scienter*. The doctrine 'at most constitutes "supplemental support" for alleging scienter but does not independently establish scienter.'" *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings PLC*, 2020 WL 2834857, at *4 (S.D.N.Y. June 1, 2020) (emphasis added; citations omitted); *Citigroup*, 2023 WL 2632258, at *22 ("Supplemental support cannot serve to independently establish scienter or bolster an inference of scienter where Plaintiffs have not adequately alleged an independently sufficient basis."

(quotation marks omitted)).[10]

Second, the doctrine is no help to Plaintiff in any event because the Complaint contains no allegations that "contradictory facts of critical importance to the company either were apparent, or should have been apparent" to any Defendant that rendered any of the remaining statements false or misleading. *Francisco*, 559 F. Supp. 3d at 320. Again, Plaintiff does not even try to point to factual allegations showing Defendants' "knowledge of facts or access to information contradicting their public statements," when seeking to invoke the core operations doctrine. *Novak*, 216 F.3d at 308; *see also Jackson v. Abernathy,* 960 F.3d 94, 99 (2d Cir. 2020) (per curiam) ("Jackson is thus left to argue that the MicroCool gown was of such core importance to the Corporate Defendants that their senior officers must have known that the challenged statements were false. . . . Such a naked assertion, without more, is plainly insufficient to raise a strong inference of collective corporate scienter.")

---

[10] *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989), cited in Plaintiff's appeal brief, is not good law because it was decided prior to the enactment of the PSLRA, as the Second Circuit recognized in *Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012). The only post-2012 case cited by Plaintiff that arguably addresses the core operations doctrine, *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 320 (S.D.N.Y. 2021), does not help Plaintiff. *Francisco* reaffirmed that the core operations doctrine can only "provide additional support for an inference of scienter"—not establish scienter outright. *Id.* And *Francisco* rejected the application of the doctrine because "scienter requires that a defendant be specifically informed of contrary information"—facts that did not exist in *Francisco*, and do not exist here. *Id.* at 321.

Finally, Plaintiff incorrectly claims that the District Court "refused to draw any inference from the core operations doctrine." O.B. at 26. Not true. The District Court expressly stated that it would "view Plaintiffs' other allegations of scienter through the lens of understanding that Nodax was one of Danimer's most important products." SA25. Thus, the District Court gave Plaintiff every favorable core operations inference, and still—correctly—concluded it was not enough to plead scienter because Plaintiff's scienter allegations as a whole did not add up to a strong inference that any Defendant acted with fraudulent intent. SA29-30.

For all these reasons, the core operations doctrine does not salvage Plaintiff's failure to plead scienter.

### 3. The District Court Properly Weighed Scienter Allegations Cumulatively and Did Not Need to List Non-Fraudulent Inferences

Plaintiff's final argument on appeal is perhaps his most bizarre. Plaintiff suggests that it must have adequately pleaded scienter because the District Court did not specify the non-fraudulent inferences that undercut Plaintiff's theory that Defendants acted with fraudulent intent. O.B. at 30-31. The District Court erred, according to Plaintiff, because it "recognized no defense-friendly inferences." *Id*. at 31.

In its detailed opinion, the District Court made clear that scienter is a comparative analysis. *See* SA22 ("[T]he inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as

38

compelling as any opposing inference of nonfraudulent intent."). The District Court properly reviewed Plaintiffs' scienter allegations together, not in isolation. SA29 ("The Court is mindful of the fact that it must 'weigh Plaintiffs' scienter allegations as a whole'"); *id.* ("The Court has weighed Plaintiffs' scienter allegations cumulatively"); SA22 ("[T]he Court must assess the total weight of the circumstantial allegations *together with* the allegations of motive and opportunity and consider their cumulative effect." (cleaned up)). The District Court considered Plaintiff's scienter allegations based on confidential witnesses, who "'shed no light on the scienter of' Defendants since 'none of them are alleged to have ever interacted with any' defendant." SA27. The District Court considered, and rejected, Plaintiff's theory that a regulatory investigation somehow supported an inference of scienter. *See* SA28 ("Plaintiffs' reliance on these investigations is insufficient to allege scienter because the investigations were opened after Defendants made their allegedly misleading statements, and Plaintiffs have made no other allegations suggesting that the investigations are probative of conscious misbehavior or recklessness by Defendants."). And the District Court considered and rejected Plaintiff's argument that Danimer's funding of research supported an inference of scienter. SA29.

Weighing all of these allegations together—along with Plaintiff's theory that Nodax was important to Danimer's business and Plaintiff's (mis)characterization of the *Wall Street Journal* article—the District Court

correctly noted that its "obligation to consider scienter allegations holistically 'does not mean that [p]laintiffs can combine inadequate allegations of motive with inadequate allegations of recklessness to demonstrate scienter.'" SA29 (quoting *Citigroup*, 2023 WL 2632258, at *22); *see also Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001) (finding no scienter where "plaintiff seeks to combine inadequate allegations of motive with inadequate allegations of recklessness").[11]

Given the clear deficiency of Plaintiff's scienter allegations and theories, there was no need for the District Court to list and weigh the far more plausible non-fraudulent inference drawn from the facts alleged in and incorporated by reference in the Complaint—namely, that Defendants had a good faith belief, based on independent testing and certifications from leading international organizations and researchers, that Nodax could "replace the 80% of plastics that are never recycled or incinerated," that products made from Nodax that "find [their] way into the wrong place" or "places that they don't belong like the ocean" will biodegrade, and that Danimer had partnerships with leading food and beverage companies to develop products that would biodegrade.

---

[11] In a footnote, Plaintiff claims, based solely on the fact that Nodax is alleged to be Danimer's "key product," that this Court should find corporate scienter adequately pled. This footnote argument is baseless. As the District Court correctly held: "Plaintiffs have also failed adequately to allege that Danimer, as a corporation, acted with scienter even if the individual Defendants have not." SA30. There are no facts alleged in the Complaint demonstrating that this is one of the "exceedingly rare instances" in which "collective corporate scienter may be inferred." *See, e.g.*, *Jackson*, 960 F.3d at 98.

* * * * *

For all these reasons, this Court should affirm the District Court's order dismissing the Complaint based on Plaintiff's failure to plead particularized facts sufficient to plead scienter.

### C. This Court Should Dismiss the Control Person Claim Because Plaintiff Failed to Plead a Primary Violation

To establish a prima facie case of Section 20(a) liability, a plaintiff "must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Schwab v. E\*TRADE Fin. Corp.*, 752 F. App'x 56, 58 (2d Cir. 2018) (summary order). Plaintiff's Section 20(a) control person claim thus depends on the existence of a primary violation under Section 10(b) of the Exchange Act. *New England Carpenters*, 80 F.4th at 179 (affirming dismissal of Section 20(a) claim because "such a claim is necessarily predicated on a primary violation of securities law" (quotation marks omitted)). Because Plaintiff's 10(b) claim fails, its control person claim against all Defendants necessarily fails too. *Id.*

The control person claim against Dowdy fails for the independent reason that he is not alleged to have made any of the remaining challenged statements, and thus is not alleged to have culpably participated in any primary violation. *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *4 (S.D.N.Y. Oct. 22, 2013) ("To state a claim for control person liability under Section 20(a), plaintiffs must allege . . . the defendant's culpable participation in the

41

primary violation.").

## VII.   CONCLUSION

This Court should affirm the dismissal of the Complaint based on Plaintiff's failure to plead specific facts necessary to satisfy the falsity and scienter elements of Plaintiff's securities fraud claim.

DATED:  March 13, 2024      Respectfully submitted,

GIBSON DUNN & CRUTCHER

By    */s/ Brian M. Lutz*
      BRIAN M. LUTZ

Brian M. Lutz
GIBSON DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8379
blutz@gibsondunn.com

Jonathan D. Fortney
GIBSON DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166
Telephone: (212) 351-4000
jfortney@gibsondunn.com

### VIII. CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This document complies with the type-volume limitation of Cir. R. 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,395 words, as calculated by the word processing system used to prepare the document.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with Georgia 14-point font.

DATED: March 13, 2024

_/s/ Brian M. Lutz_
BRIAN M. LUTZ

## IX.    CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.



BRIAN M. LUTZ